1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAXIMO DIAZLEAL-DIAZLEAL,

                          Petitioner,

        v.

JAMES KEY,

                          Respondent.

Case No. 2:21-cv-00068-JCC-TLF

REPORT AND
RECOMMENDATION

Noted for November 4, 2022

        This matter comes before the Court on Petitioner's petition for writ of habeas

corpus under 28 U.S.C. § 2254, challenging the legality of his conviction for rape of a

child in the first and second degree. Petitioner presents four grounds for habeas relief:

(1) that the trial court erred in permitting a police witness to opine favorably on the

demeanor of the child victim, R., during an interview; (2) that the trial court erred by not

striking testimony from Petitioner's child, S., of other bad acts; (3) that a jury instruction

and election of incidents in closing statements created confusion; and (4) that the State

presented insufficient evidence to convict Petitioner of two crimes. Petitioner also

requests an evidentiary hearing. For the reasons set forth below, the undersigned

recommends that the petition and the request for an evidentiary hearing be DENIED,

and that the petition be DISMISSED. The undersigned also recommends that issuance

of the certificate of appealability (COA) be DENIED.

REPORT AND RECOMMENDATION - 1

1

BACKGROUND

2    A. Statement of Facts

3        Division One of the Court of Appeals of Washington ("state court of appeals")

4  affirmed Petitioner's convictions on direct appeal, *State v. Diazleal-Diazleal*, 3

5  Wn.App.2d 1060, 2018 WL 2316962 (May 21, 2018), Dkt. 14-1 at 16–42. The Court of

6  Appeals summarized the facts as follows:

7        In 2001, [Petitioner] and Marisol lived together in a house in Renton with
        her 4–year–old daughter R. and her 3–year–old son J. In 2002 or 2003,
8        [Petitioner] and Marisol married. Marisol's 14–year–old sister N. lived with
        the family from approximately 2002 to 2003. In 2004, Marisol gave birth to
9        S.

10       Beginning in approximately 2002, [Petitioner] would go into five-year-old
        R.'s room at night two to three times a week to touch" and rub her chest and
11       private area. [Petitioner] told R. it was secret. [Petitioner] taught R. how to
        kiss him, put her tongue inside of his mouth, and bite or nibble on his bottom
12       lip. [Petitioner] would grab and squeeze R.'s nipples to help her breasts
        grow. [Petitioner] inserted his partially amputated finger into R.'s vagina.
13       [Petitioner] made R. play with his penis with her hands until he ejaculated.

14       As R. got older, [Petitioner] started doing more things. Some nights, R.
        would wake up with [Petitioner's] penis in [her] mouth. [Petitioner] told R. to
15       suck on it. When she gagged, [Petitioner] would make R. finish him off with
        her hands. R. started sleeping facing the wall because she didn't want it to
16       happen anymore.

17       When R. was eight or nine years old and in the second grade, the family
        moved to a little house in Kent. [Petitioner] continued to sexually abuse R.
18       [Petitioner] would put her breasts in his mouth and rub her vagina on his
        penis. When Marisol went to work, [Petitioner] began sexually abusing R.
19       during the day as well as at night.

20       [Petitioner] started incorporating oral sex. R. often would wake up to
        [Petitioner] performing oral sex on her. [Petitioner] threatened R. not to tell
21       anyone. [Petitioner] told R. that without him, the family would be homeless
        and they wouldn't have any money.

22
        [Petitioner] engaged in sexual intercourse with R. for the first time in 2007
23       when she was 10 years old. After the family moved to a big house in Kent,
        R. often woke up with [Petitioner] on top of her. She was scared and angry.
24       [Petitioner] would cover her mouth and tell her to stay quiet while his penis

25

REPORT AND RECOMMENDATION - 2

was inside of her. R. said sexual intercourse with [Petitioner] caused pain and the lower half of her stomach would hurt. R. started putting things in front of the door so he wouldn't be able to come in her room or to give herself a warning because it was better than being wakened up and scared by [Petitioner].

\*\*\*

When J. was in the seventh grade, he saw [Petitioner] and R. laying in bed together. J. didn't really understand what they were doing. [Petitioner] told J. to get out of the room. J. closed the door and left.
[Petitioner] had intercourse with R. for the last time when she was 13 or 14 years old before he left the state in approximately 2011. . . .

\*\*\*

[Petitioner] returned to Washington in the summer of 2014. [Petitioner] . . . Marisol [] want[ed] to give [Petitioner] the opportunity to be a father to S.

[Petitioner] lived with his brother Juan [] and sister-in-law Mary []. Marisol allowed 10–year–old S. to stay with [Petitioner] most every weekend. Neither R. nor J. wanted to visit [Petitioner].

In November 2014, S. told Marisol she did not want to go over to [Petitioner's] house. When Marisol responded, "It's Friday, you're going to go to your dad," S. got very upset and started crying.

R. noticed that after S. stayed with [Petitioner] on the weekends, S. acted very odd. R. told her boyfriend the whole truth—that [Petitioner] sexually abused and raped her. . . . R. decided she had to tell Marisol about the sexual abuse.

In January 2015, R. wrote a letter to her mother about [Petitioner] sexually abusing her . . . .

Marisol contacted the police. Kent Police Department Special Assault Unit Detective Melanie Robinson interviewed R.

Marisol's younger sister N. disclosed that [Petitioner] molested her when she lived with the family from 2002 to 2003. S. told her mother that [Petitioner] touched her at night when she stayed with him. Detective Robinson interviewed N. and S.

Dkt. 14-1 at 16–21 (original alterations adopted) (some quotation marks omitted).

B. <u>State Court Procedural History</u>

The State charged Petitioner with two counts of domestic violence rape of a child in the first degree of R. between February 11, 2007, and February 10, 2009, and one count of domestic violence rape of a child in the second degree of R. between February 11, 2009, and February 10, 2011. *Id.* at 21. Petitioner pleaded not guilty and proceeded to trial. *Id.* The jury convicted him of two counts of domestic violence rape of a child in the first degree and one count of domestic violence rape of a child in the second degree of his stepdaughter R. *Id.* at 1. The trial court imposed an indeterminate sentence of 236 months to life imprisonment. Dkt. 14-1 at 6.

On February 23, 2017, Petitioner filed a direct appeal in the Washington State Court of Appeals, Division One. Dkt. 14-1 at 44–89. Petitioner raised three assignments of error, two of which are relevant here. First, Petitioner contended that the trial court erred when it initially admitted S.'s testimony under the "common scheme" exception to ER 404(b) but then denied his motion to strike S.'s testimony "after the court agreed that the actual testimony entirely failed to meet the 'common scheme' exception that was the sole basis for ruling the evidence admissible pre-trial, premised on the prosecution's offer of proof." *Id.* at 52.

Petitioner contended the ER 404(b) evidence caused him "[i]ncurable prejudice," "result[ing] in an unfair trial in violation of Due Process." *Id.* at 86.

Second, Petitioner contended that the trial court violated his Sixth Amendment "right to have the jury determine witness credibility and the defendant's guilt when it overruled his objections to the improper opinion testimony of a police detective who testified that [R.'s] demeanor was tellingly credible because the detective had done a lot of cases." *Id.* at 52 & n.1.

1    Division One affirmed Petitioner's convictions. *Diazleal-Diazleal*, 3 Wash. App. 2d

2    1060, 2018 WL 2316962 (May 21, 2018), Dkt. 14-1 at 16–42. Regarding Petitioner's

3    first assignment of error, it held that the trial court "did not abuse its discretion in ruling

4    the evidence showed a common plan or scheme of [sexual] grooming." *Id.* at 38. The

5    court of appeals reasoned that "[t]he testimony of S. about the touching that occurred

6    when she was alone at night in the same bed with [Petitioner] was substantially similar

7    to R.'s description of [Petitioner's] initial sexual abuse." *Id.* Division One further held that

8    "the court did not err in denying the defense motion to reconsider the ER 404(b)

9    common scheme or plan ruling and strike S.'s testimony." *Id.* at 39.

10    Regarding Petitioner's second assignment of error, the Court held that the trial

11    court "did not abuse its discretion in overruling the objections to [the detective's]

12    testimony." and reasoned that "the record show[ed] the testimony about R.'s demeanor

13    was based on [the detective's] objective observations." *Id.* at 40-41.

14    On June 22, 2018, Petitioner filed a petition for review. Dkt. 14-1 at 159–84.

15    Petitioner's first issue for review was the same as his first assignment error on direct

16    appeal. *Id.* at 165. However, in the petition for review, Petitioner raised this issue as a

17    state law evidentiary error and did not assert a violation of federal law. *See id.* at 165,

18    167–77. On October 3, 2018, the Washington Supreme Court denied review. *Id.* at 215;

19    191 Wash.2d 1016 (2018).

20    On October 28, 2019, Petitioner filed a personal restraint petition ("PRP) in

21    Division One. *Id.* at 219–227. In his first ground for relief, Petitioner alleged that the trial

22    court erred in giving a jury instruction under *State v. Petrich*, 101 Wash. 2d 566 (1984),

23    *overruled on other grounds by State v. Kitchen*, 110 Wash. 2d 403 (1988). Among other

24

25

1    things, Petitioner alleged this error violated due process and equal protection. Dkt. 14-1

2    at 223. In his second ground for relief, Petitioner contended that the State presented

3    insufficient evidence to find him guilty "of two identical crimes." *Id.*

4            On June 15, 2020, Division One entered an order dismissing Petitioner's PRP.

5    *Id.* at 371–75. The Court of Appeals ruled that the doctrine of invited error barred his

6    first ground for relief because Petitioner "proposed the instruction" that he challenged in

7    his PRP. *Id.* at 372–73. Furthermore, Division One declined to consider Petitioner's

8    argument that "he was unaware that the State would elect a particular act to form the

9    basis for counts I and II during closing argument" because he raised it for the first time

10   in a reply brief. *Id.* at 373 n.2.

11           The Court of Appeals characterized ground two as follows: "[Petitioner] contends

12   that the evidence was insufficient to support the first-degree rape convictions because

13   [R.] and her mother testified about where the family lived during the charging period in a

14   manner that was inconsistent with the State's argument." *Id.* at 373. "To convict

15   [Petitioner] of first-degree rape of a child, the State was required to prove beyond a

16   reasonable doubt that he had sexual intercourse with [R.] when she was less than 12

17   years old . . . ." *Id.* at 374. "The prosecutor identified the basis for count I as an incident

18   in which [Petitioner] raped [R.] in her mother's bedroom during the daytime when the

19   family live in the 'little house,' and the basis for count II as his rape of [R.] in her

20   bedroom during the nighttime when the family lived in the 'big house.'" *Id.* at 374. R.

21   testified that the family moved to the big house when she was in the fifth grade and that

22   the rape that took place there occurred when she was 10 or 11. *Id.* However, Petitioner

23   contended that R. would have been 11 or 12 in the fifth grade because she repeated

24

25

second grade. *Id.* at 374–75. Thus, Petitioner contended "the State did not prove

beyond a reasonable doubt that count II occurred during the charging period." *Id.* at

375. Division One rejected this argument because Marisol [R.'s mother] testified that the

family moved to the big house when R. was in the third grade, and "the jury was entitled

to believe [Marisol's] timeline." *Id.* at 374–75.

On August 26, 2020, Petitioner filed a petition for review. *Id.* at 377–86. In his

petition for review, Petitioner framed ground one as a claim of trial court error and did

not expressly characterize ground one as a federal claim or cite any federal cases when

discussing this ground. *See id.* at 379–85.

On December 10, 2020, the Washington Supreme Court denied review for the

same reasons as the Court of Appeals. *Id.* at 394–95.

C. Procedural Background in Federal Court

On January 20, 2021, Petitioner filed his federal petition in this Court. *See* Dkt. 3

at 1, 15. He raises the following claims: Dkt. 3-1.

GROUND ONE: The [trial] court erred when it allowed a police detective to
opine favorably on [R.'s] demeanor during her joint victim interview.

GROUND TWO: The trial court erred by not striking [S.'s] other bad act[s]
testimony.

GROUND THREE: The [*Petrich*] Instruction and the declared election of
incidents in the closing [argument] by the State created confusion and
prejudice.

GROUND FOUR: Insufficient evidence was presented by the State to find
[Petitioner] guilty of two identical crimes.

*Id.* at 1–2.

1

DISCUSSION

2    A. <u>Exhaustion (Claims 2 and 3)</u>

3       1.    <u>Failure to Exhaust</u>

4          In claim 2, Petitioner contends that the trial court erred by not striking S.'s other

5    bad acts testimony. Dkt. 3-1 at 1. In claim 3, Petitioner contends that the trial court's

6    allegedly erroneous *Petrich* instruction deprived him of due process. *Id.* at 10.

7          Petitioner raised claim 2 on direct appeal and, in relevant part, presented it in

8    federal terms. *See* Dkt. 14-1 at 52, 86. However, in his petition for review , Petitioner

9    raised this claim to the Washington Supreme Court only under state law. *See id.* at 165,

10   167–77.

11         Petitioner raised claim 3 in his PRP. *See id.* at 223. Yet, in his petition for review,

12   Petitioner raised this claim as an issue of trial court error and did not expressly

13   characterize it as a federal claim or cite any federal law when discussing it. *Id.* at 379–

14   85. Petitioner has not disputed Respondent's contention that these claims unexhausted

15   and procedurally defaulted. *See* Dkt. 28.

16         "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust

17   available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the

18   opportunity to pass upon and correct alleged violations of its prisoners' federal rights."

19   *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks

20   omitted). "To provide the State with the necessary opportunity, the prisoner must fairly

21   present his claim in each appropriate state court (including a state supreme court with

22   powers of discretionary review), thereby alerting that court to the federal nature of the

23   claim." *Id.* (citation and internal quotation marks omitted); *accord O'Sullivan v. Boerckel*,

24   526 U.S. 838, 842 (1999) ("Because the exhaustion doctrine is designed to give the

25

REPORT AND RECOMMENDATION - 8

state courts a full and fair opportunity to resolve federal constitutional claims before

those claims are presented to the federal courts, we conclude that state prisoners must

give the state courts one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process.").

To fairly present a federal claim, "the petitioner must make the federal basis of

the claim explicit either by specifying particular provisions of the federal Constitution or

statutes, or by citing to federal case law." *See Insyxiengmay v. Morgan*, 403 F.3d 657,

668 (9th Cir. 2005) (citation omitted); *see also Reese*, 541 U.S. at 32. "[O]rdinarily a

state prisoner does not 'fairly present' a claim to a state court if that court must read

beyond a petition or a brief (or a similar document) that does not alert it to the presence

of a federal claim in order to find material, such as a lower court opinion in the case, that

does so." *Reese*, 541 U.S. at 32.

In Washington, to exhaust a federal claim on direct review, the petitioner usually

must present it in his appellate brief in the state court of appeals and in a petition for

review in the state supreme court. *See Casey v. Moore*, 386 F.3d 896, 915–18 (9th Cir.

2004).

Generally, a PRP is "Washington State's mechanism for collateral challenges."

*Barker v. Fleming*, 423 F.3d 1085, 1090 (9th Cir. 2005). "[A] personal restraint petition

may be used to assert the violation of a federal constitutional right even if the defendant

did not raise the issue on direct appeal." *Casey*, 386 F.3d at 919.

Here, Respondent asserts that Petitioner failed to properly exhaust claims 2 and

3 "because he presented those claims to the Washington Supreme Court as issues of

state law, and did not specifically allege a federal claim." Dkt. 13 at 7. The record

supports this assertion, *see* Dkt. 14-1 at 165, 167–77, 379–85, and Petitioner has not

disputed it, *see* Dkt. 28. Petitioner's failure to challenge Respondent's supported

assertion conclusively establishes that he failed to exhaust state remedies regarding

claims 2 and 3. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971) ("Petitioner,

in his traverse, has not disputed the contention [at issue], and thus this Court may

accept the fact that he has not exhausted his remedies with respect to this issue." (citing

28 U.S.C. § 2248)); *see also Morgan*, 403 F.3d at 668 ("Exhaustion is determined on a

claim-by-claim basis.").

       2.   <u>Procedural Default</u>

      Respondent further contends, and Petitioner has not disputed, that claims 2 and

3 are procedurally defaulted. Dkt. 13 at 7, 16–18.

      According to the doctrine of procedural default, "a federal court will not review the

merits of claims, including constitutional claims, that a state court declined to hear

because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan,* 566

U.S. 1, 9 (2012).

      The state court procedural rule must be both "independent" and "adequate".

*Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991). A state procedural rule is

considered "adequate" if it was "firmly established and regularly followed" at the time of

the act or omission that caused a procedural bar to be applicable. *Ford v. Georgia,* 498

U.S. 411, 423-25 (1991). The procedural rule under state law would be "independent" if

it is not dependent on a federal constitutional ruling or interwoven with federal law. *Ake

v. Oklahoma,* 470 U.S. 68, 75 (1985); *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir.

1999).

Procedural default will only be excused if the petitioner shows cause for the default and actual prejudice from an alleged violation of federal law, or the petitioner must demonstrate that failure to consider the claims will cause a fundamental miscarriage of justice because the petitioner is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 329 (1995); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Rodney v. Filson,* 916 F.3d 1254, 1259 (9th Cir. 2019).

"[W]here a petitioner did not properly exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claim is procedurally defaulted [for purposes of federal habeas review]." *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc) (citation and internal quotation marks omitted); *Powell v. Lambert*, 357 F.3d 871, 874 (9th Cir. 2004) ("If a petitioner has failed to present his claims to the state courts and, because of procedural default, is now barred from doing so, his claims are deemed unexhausted and therefore not cognizable on federal habeas." (citations omitted)).

Here, Petitioner could not return to state court to properly exhaust claims 2 and 3. Washington's time bar statute prevents Petitioner from returning to the state court of appeals to raise those claims in a new PRP. "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). Petitioner's judgment became final on October 26, 2018, when Division One issued its mandate and the one-

1  year period has long since passed. RCW 10.73.090(3)(b); *Hiivala v. Wood*, 195 F.3d

2  1098, 1105 (9th Cir. 1999).

3       RCW 10.73.090 "provides an independent and adequate state ground to bar

4  federal review." *Casey*, 386 F.3d at 920 (citing *Shumway v. Payne*, 223 F.3d 982, 989

5  (9th Cir. 2000)). If Petitioner returned to state court and filed a new PRP raising these

6  claims, the state court of appeals would dismiss it as untimely.

7       "If a state procedural bar is an adequate and independent ground for dismissal,

8  habeas corpus is foreclosed in federal court unless the petitioner can show cause for

9  the procedural default and resulting prejudice, or show that a failure to consider his

10 claims would result in a fundamental miscarriage of justice [i.e., that he is actually

11 innocent]." *See Powell*, 357 F.3d at 874 (citation omitted). Petitioner bears the burden of

12 showing cause and prejudice or actual innocence. *See id.*; *see also, e.g.*, *Scott v.*

13 *Schriro*, 201 F. App'x 411, 413 (9th Cir. 2006) ("To establish prejudice resulting from a

14 procedural default, a petitioner bears the burden of showing that he suffered a

15 constitutional error that worked to his actual and substantial disadvantage." (citation

16 omitted)); *Jaramillo v. Stewart*, 340 F.3d 877, 883 (9th Cir. 2003) (petitioner has

17 "burden" of proving "actual innocence"); *LaPier v. Risley*, 862 F.2d 318, *1 (9th Cir.

18 1988) ("The defendant bears the burden of showing 'cause.'" (citations omitted)).

19      Here, Petitioner has not attempted to show cause and prejudice for his

20 procedural default of claims 2 and 3 or that he is actually innocent. And nothing in the

21 record suggests that he could make this showing. Thus, because he has not met this

22 burden, the Court should dismiss claims 2 and 3 as procedurally defaulted. *See Franklin*

23 *v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002).

24

25

B. <u>Substantive Claims</u>

1.    <u>Standard of Review</u>

A *habeas corpus* petition filed under 28 U.S.C. § 2254:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). It also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's

application of clearly established law must be objectively unreasonable." *Id.*; *see also*

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This is a "'highly deferential standard," which "demands that state-court decisions

be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102

(quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in

judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore,

"a state prisoner must show that the state court's ruling on the claim being presented

was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.*

at 103.

A *habeas* petition also may be granted "if a material factual finding of the state

court reflects 'an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8

(9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual

determination is "presumed to be correct," though, and the petitioner has "the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1). As such, a district court "may not simply disagree with the state court's

factual determinations," but rather it must "conclude" that those determinations did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir. 1998).

"[W]hether a state court's decision was unreasonable" also "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court knew and did," and the state court's decision is "measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Cullen*, 563 U.S. at 182 (quoting *Lockyer*, 538 U.S. at 71-72); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011). In addition, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The error, furthermore, must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (*habeas* petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

2.    Claim 4

In claim 4, Petitioner alleges that the evidence was insufficient to support his first-degree rape convictions because, contrary to the State's accusation, R. was not less than 12 years old when he allegedly raped her in the "little house." *See* Dkt. 3-1 at 11. The state court of appeals rejected this argument because Marisol testified that the family moved to the "big house" when R. was in the third grade, when she still would

have been less than 12 years old. *See* Dkt. 14-1 at 374–75. The state supreme court

denied review for the same reason. Dkt. 14-1 at 395.

The Parties dispute whether Petitioner properly exhausted this claim and whether

it is procedurally defaulted. *See supra* pp. 8–9. However, "[a]n application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant

to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

And where, as here, a claim is "clearly not meritorious," courts may "reach the merits of

habeas [claims]." *See Franklin*, 290 F.3d at 1232 (citation omitted);  Indeed, even after

finding a claim unexhausted, a court may dismiss it as meritless. *Murray v. Schriro*, 882

F.3d 778, 808 (9th Cir. 2018) (citing *Bell v. Cone*, 543 U.S. 447, 451 & n.3 (2005).

Accordingly, the Court declines to decide these issues and proceeds to address claim 4

on the merits.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing the

sufficiency of the evidence to support a criminal conviction, a federal habeas court must

"determine whether the record evidence could reasonably support a finding of guilt

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]he

relevant question is whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Id.* at 319 (citation omitted).

The Supreme Court has "made clear that *Jackson* claims face a high bar in

federal habeas proceedings because they are subject to two layers of judicial

deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). In this context,
"the only question under *Jackson* is whether [the state court's decision] was so
insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Here, the state courts' rejection of this claim amply met the threshold of bare
rationality. The record supports the state courts' finding that Marisol testified that R.
moved to the "big house" in the third grade and was less than 12 years old. *See* Dkt. 20
at 284–85. Therefore, the state courts' rejection of claim 4 was not contrary to, or an
unreasonable application of, clearly established federal law or an unreasonable
determination of the facts.

Petitioner is not entitled to habeas relief on Claim 4.

3.    <u>Claim 1</u>

In claim 1, Petitioner alleges the trial judge erred by allowing a detective to testify
about the minor victim R.'s demeanor during an interview. Petitioner asserts this
constitutes improper vouching in violation of the Sixth Amendment. Dkt. 28 at 3.

Petitioner argues the detective engaged in impermissible "vouching" in her
testimony that R.'s demeanor was "telling." *Id*. The state court of appeals noted that the
detective testified, in pertinent part, as follows:

> Q. Do you remember [R.]'s demeanor during the interview?
> A. I do,
> Q. And can you describe for me and the jury?
> A. **[R.]'s demeanor was very telling, I have done a lot of cases such
> as** —
>> DEFENSE COUNSEL]: Objection. Improper opinion.
>> THE COURT: If you can just describe it, please.
> A. Excuse me. It was very difficult for her to talk about this whole situation.
> She was very emotional. You can sense she was shaking, trembling,
> voice trembled, voice cracked. Her -- you just got a sense of — her
> demeanor was -- It was very difficult for her to go over it.
>> [DEFENSE COUNSEL]: Objection. Improper (inaudible.)
>> THE COURT: Overruled.

1

2
    Q. (By (Prosecutor]) Was [R.] crying at all?
    A. Yes, she was.
3
    Q. Can you talk about the volume of her voice?
    A. Very shallow. Again, her voice was cracking and it was quiet, and It
4
    was difficult to get the information from her because of this.
          [DEFENSE COUNSEL]: Objection. Improper opinion, Speculation.
          THE COURT: Overruled.

5   Dkt. 14-1 at 41 (emphasis added).

6        The state court of appeals concluded that the record did not support Petitioner's

7   argument that the detective provided impermissible opinion testimony on the witness's

8   credibility. *Id*. at 40. Instead, Division One held "the record shows the testimony about

9   R.'s demeanor was based on [the detective's] objective observations," and the trial court

10   did not abuse its discretion in overruling the objections. *Id*. at 40, 41.[1]

11        Petitioner has not shown the Washington Court of Appeals' resolution of this

12   issue was contrary to or an unreasonable application of clearly established federal law,

13   as determined by the U.S. Supreme Court. First, Petitioner does not cite to any United

14   States Supreme Court opinion that would have required exclusion of the detective's

15   testimony here. Dkt. 28. *See Burling v. Addison,* 451 F. App'x 761, 764 (10th Cir. 2011)

16   (habeas relief is not available on claims of impermissible "vouching" where petitioner

17   cites no United States Supreme Court opinion that would have required exclusion of the

18   witnesses' testimony). Instead, Petitioner cites only to the prohibition of "improper

19   suggestions, insinuations, and . . . assertions of personal knowledge" by a *prosecutor*

20   during argument. *Berger v. United States*, 295 U.S. 78, 88 (1935) (cited by Dkt. 28 at 3).

21

22   [1] Petitioner contends the state court of appeals mischaracterized the trial court's ruling, asserting that the
trial court actually sustained the objection by instructing the witness to "just describe it"—but then erred by
23   failing to strike the testimony. Dkt. 28 at 5. This is not a pertinent point. Ultimately, Petitioner's complaint
is that the trial court—whether through overruling an objection or failing to strike evidence—permitted the
24   jury to consider the challenged testimony.

25

REPORT AND RECOMMENDATION - 18

Because there is no clearly established decision of the United States Supreme Court requiring the exclusion of witness testimony regarding a victim's demeanor, the court of appeals did not interpret federal law in a manner that was either contrary to, or an unreasonable application of any United States Supreme Court holdings. *Woods v. Donald,* 575 U.S. 312, 317 (2015).

Second, Petitioner's claim asserts state law evidentiary error. A state court's evidentiary rulings are not a proper subject for federal habeas corpus review. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle*, 502 U.S. at 68 (holding that state court admissibility and foundational rulings raise no federal habeas issues). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id*. (*citing* 28 U.S.C. § 2241). The admission of evidence does not provide a basis for habeas relief unless it rendered the trial "fundamentally unfair" in violation of due process. *Id*. at 67-69; *see also Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995).

Here, the state trial court's admission of the evidence did not render the trial fundamentally unfair. Petitioner is not entitled to relief unless admission of the testimony had a substantial or injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 637. A review of the record shows it did not have such an effect. The detective did not opine on the truthfulness of R.'s testimony, but merely reported objective observations of her demeanor. Moreover, in light of the strength of R.'s testimony, and of the supporting testimony of other witnesses, the record does not support a determination that the trial was fundamentally unfair.

1

## EVIDENTIARY HEARING

2      The decision to hold an evidentiary hearing is committed to the Court's

3  discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "In deciding whether to grant

4  an evidentiary hearing, a federal court must consider whether such a hearing could

5  enable an applicant to prove the petition's factual allegations, which, if true, would

6  entitle the applicant to federal habeas relief." *Id.* at 474 (citations omitted).

7      "It follows that if the record refutes the applicant's factual allegations or otherwise

8  precludes habeas relief, a district court is not required to hold an evidentiary hearing."

9  *Id.* "[A]n evidentiary hearing is not required on issues that can be resolved by reference

10  to the state court record." *Id.* (citation and internal quotation marks omitted).

11  Furthermore, "an evidentiary hearing is not required on allegations that are conclusory

12  and wholly devoid of specifics." *Clark v. Chappell*, 936 F.3d 944, 967 (9th Cir. 2019)

13  (alteration adopted) (citation and internal quotation marks omitted). "Nor is an

14  evidentiary hearing required if there are no disputed facts and the claim presents a

15  purely legal question." *Id.* (citation and internal quotation marks omitted).

16      Here, "[t]here is no indication from the arguments presented" by Petitioner "that

17  an evidentiary hearing would in any way shed new light on the" grounds for relief raised

18  in his petition. *Totten v. Merkle*, 137 F.3d 1172,1177 (9th Cir. 1998). Because, as

19  discussed above, the grounds Petitioner raises may be resolved based solely on the

20  state court record, and he has failed to prove his allegation of constitutional errors, no

21  evidentiary hearing is required.

22

## CERTIFICATE OF APPEALABILITY

23      If the Court adopts the undersigned's Report and Recommendation, it must

24  determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254

25

Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that Petitioner not be issued a COA. No jurist of reason could disagree with the above evaluation of Petitioner's constitutional claims or conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for writ of *habeas corpus* with prejudice. A proposed order and proposed judgment accompany this report and recommendation.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

Accommodating the above time limit, the Clerk shall set this matter for consideration on **November 4, 2022**, as noted in the caption.

Dated this 17th day of October, 2022.

Theresa L. Fricke
United States Magistrate Judge